UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| COR CLEARING, LLC, a Delaware limited liability company, | ) ) ) ) | Case No. _____ |
| Applicant, | ) ) ) | **APPLICANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS IN RESPONSE TO SUBPOENA** |
| vs. | ) ) | |
| NATIONAL FINANCIAL SERVICES LLC, | ) ) ) | |
| Respondent. | ) ) ) ) | |

COMES NOW Applicant COR Clearing, LLC ("COR Clearing") and hereby moves for an Order to Show Cause why National Financial Services LLC ("NFS") should not be compelled to produce documents and things responsive to COR Clearing's subpoena served on December 8, 2015. In support thereof, and to remedy NFS's complete failure to respond to or acknowledge the subpoena, COR Clearing respectfully shows the Court as follows:

## I.     INTRODUCTION

In a pending lawsuit in the United States District Court for the District of Nebraska titled *COR CLEARING, LLC, a Delaware limited liability company, vs. CALISSIO RESOURCES GROUP, INC. a Nevada Corporation; ADAM CARTER, an individual; SIGANTURE STOCK TRANSFER, INC., a Texas Corporation; and DOES 1-50, 8:15-cv-00317-LES-TDT*, COR Clearing seeks to remedy a harm caused by Defendants Calissio Resources Group, Inc. ("Calissio"), Adam Carter, and Signature Stock Transfer, Inc. ("Signature"). Because of fraudulent actions undertaken by Calissio and Carter, funds were unlawfully debited from COR

Clearing's accounts in order to fund unauthorized, unlawful, and void due bills paid to purported shareholders of Calissio in connection with the transfer of shares not entitled to dividends.[1] Because some of those due bills were paid to NFS (and, upon information and belief, credited to NFS's customers), NFS is in possession of information highly relevant and material to COR Clearing's lawsuit.

COR Clearing lawfully issued and served a subpoena on NFS in order to discover this highly relevant information, and COR Clearing files this Motion because NFS has failed to respond to, or even acknowledge, the subpoena.  The subpoena seeks, among other things, the identity of entities that gained an unjust windfall at COR Clearing's expense; it also seeks information regarding the true extent of the fraud and unlawful activity perpetuated by Defendants.  NFS, for its part, has ignored the subpoena (as well as multiple other communications from COR Clearing), forcing COR Clearing to file the instant Motion to secure NFS's compliance with the lawfully and duly issued subpoena.  For the reasons stated below, COR Clearing respectfully requests that the Court grant the Motion, order NFS's full and complete production of documents responsive to the subpoena, and grant COR Clearing such other relief as to which COR Clearing is entitled.

## II.     FACTUAL BACKGROUND

**A.  The Subpoena Seeks Material Information Relevant To COR Clearing's Lawsuit**

---

[1] Where a dividend is announced and a dividend-eligible stock is sold between the record date and the ex-dividend date, the seller is assessed a "due bill" that represents the right of the purchaser to receive the dividend presumably paid to the seller, who was the shareholder on the record date.  The due bill process is utilized because the issuer of the dividend will ordinarily send a dividend payment to the shareholder on its books as of the record date, the last record of ownership available to the issuer, rather than to the legal owner of the dividend right:  the shareholder as of the ex-dividend date.

The subpoena at issue here (the "Subpoena," attached hereto as **Exhibit A)**, seeks highly relevant, critical information relating to COR Clearing's lawsuit against Calissio, Carter, and Signature. As extensively detailed in COR Clearing's lawsuit and supporting affidavits, attached hereto as **Exhibit B**, COR Clearing was the victim of an extensive fraud perpetuated by Calissio and Carter, resulting in an unjustified credit to NFS's accounts.

To execute their fraud, Calissio and Carter took advantage of a weakness in the due bill payment system implemented by Depositary Trust Clearing Corporation ("DTCC").[2] On September 30, 2010, Calissio issued a large number of shares of Calissio stock at a cost basis of $.01. On June 1, 2015, Calissio announced that it had scheduled a dividend payment for August 17, 2015; specifically, it announced that on August 17, 2015, a cash dividend of $0.011 per common share of the Company was "to be paid to the holders of the issued and outstanding Common Shares as of the close of business on June 30, 2015." (Declaration of David Aronoff, attached as **Exhibit B-1**, at ¶ 5.) Those shareholders who owned the stocks as of August 19, 2015, were the ones entitled to this dividend. (Declaration of Carlos Salas, attached as **Exhibit B-2**, at ¶ 17.)

What Calissio failed to disclose in its multiple press releases, however, was that after June 30, 2015 (the "record date"), it issued hundreds of millions of new shares of common stock in connection with the conversion of convertible debt previously issued by Calissio. (Salas Decl. ¶ 18.) These new shares totaled approximately four times the number of shares outstanding as of the record date of June 30th. (*Id.*) Because the new shares (which totaled approximately 80% of

---

[2] Because of the complexity of the fraud and DTCC's interim accounting procedures, a brief summary is provided in this Motion. A more complete explanation and description of the fraud may be found in COR Clearing's Original Complaint, and the affidavits of Carlos Salas and David Aronoff, attached hereto as Exhibit B.

3

all Calissio shares available) were issued after the record date, they were not eligible for the dividends attached to the previous shares. (Salas Decl. ¶ 17.)

Even though only roughly 20% of the available Calissio shares were eligible for the dividend, DTCC assessed and paid due bills on all shares of Calissio stock that transacted between June 30 and August 19. (Salas Decl. ¶ 10.) This resulted in a massive error that took money belonging to others out of their accounts and paid it into the accounts of Calissio and other parties who were not entitled to it.[3]

A significant portion of those credits were funded by debits wrongly charged against COR Clearing's accounts. On August 20 and 21, 2015, DTCC debited COR Clearing for approximately $4.0 million relating to these erroneous due bills assessed on the shares sold by COR Clearing's customers.

Relevant here, the error resulted in credits made to NFS's accounts. NFS is a broker-dealer that offers securities transaction settlement services to its customers. As such, NFS facilitates its customers' purchase of stock shares on the OTC Markets.[4] COR Clearing is aware of facts indicating that NFS's accounts were credited with due bill payments. Upon information

---

[3] Not only did DTCC pay dividends on the 80% of shares that were not dividend-eligible because they were issued after the June 30th record date, but a large portion of this money went to Calissio because of Calissio's stock repurchase program. Essentially, Calissio defrauded the market by discreetly issuing shares of Calissio stock that were not dividend-eligible and then buying back those shares, knowing that DTCC's normal course of action is to collect due bill payments from companies and pay the funds to the current holders of the shares for all shares in its system without verifying whether the shares or the recipients were actually eligible for the dividend payments that would have justified the due bills.

[4] COR Clearing supports straight through processing of equities, options, mutual funds and fixed-income products, complemented by a fully-automated back office staffed with responsive professionals. In this capacity, COR Clearing supports independent broker dealers who have customers who want to trade stock on the various markets, including the OTC Markets, which serves corporations such as Calissio. COR Clearing facilitates trades supported by the market, which allows independent broker dealer customers (such as NFS) to buy and sell stock through their accounts. (Salas Decl. at ¶ 8.)

4

and belief, those funds ultimately went to NFS's customers. As a broker-dealer that settled the purchase transactions for the Calissio shares, NFS has relevant information related to its customers' purchase of the Calissio shares and the improper payments of due bills to those shareholders including, but not limited to, the identity of those customers and amounts credited.

### B. NFS Has Ignored COR Clearing's Communications And The Issued Subpoena.

Because NFS was credited with improper due bill payments, NFS is in possession of information highly relevant to COR Clearing's lawsuit and claims. In light of that role, and prior to serving a subpoena, COR Clearing sent multiple notices to NFS regarding the underlying litigation, all of which have been ignored by NFS.

For instance, on October 20, 2015, COR Clearing sent a letter to NFS notifying it of the proceedings in the United States District Court for the District of Nebraska and explaining that COR Clearing believes NFS's customers might have been credited with improper due bill payments. (*See* Oct. 20, 2015 Letter from Michael Hilgers to NFS, attached hereto as **Exhibit C**.) On November 12, 2015, COR Clearing sent another letter to NFS again explaining that NFS's customers received the improper due bill payments (and thus are holding money belonging to COR Clearing), and requesting that NFS freeze those credits and return them to COR Clearing. (*See* Nov. 12, 2015 Letter from Michael Hilgers to NFS, attached hereto as **Exhibit D**.) NFS ignored these letters.

On December 8, 2015, COR Clearing served the Subpoena on NFS. (*See* Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, attached hereto as Exhibit A.) The Subpoena set a response deadline of December 18, 2015. (*Id.*) NFS, however, has not responded to the Subpoena in any way. It has not produced the documents requested, and it has not lodged any objections to the Subpoena. Thus, COR

5

Clearing is forced to seek the assistance of this Court to compel NFS to produce the information sought.

### III.   ARGUMENT AND AUTHORITIES

Under Federal Rule of Civil Procedure 45, when a non-party is served with a subpoena, it must either produce the information requested by the date set forth in the subpoena, or it must take some act to resist the subpoena—either serving objections, moving to quash, or moving for a protective order—within the earlier of 14 days after service or the time for compliance.  *See* Fed. R. Civ. P. 45(d)(2), 45(d)(3), 45(e); *see, e.g.*, *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 412 (S.D.N.Y. 2000).  If a subpoenaed non-party fails to take action to resist the subpoena within the 14-day period, all its objections to the subpoena are waived.  *Id.; Carey v. Air Cargo Assoc., Inc.*, Nos. M18-302, 09-2353, 2011 WL 446654, at *3 (S.D.N.Y. Feb. 7, 2011) (holding that non-party who "chose to ignore the subpoena entirely" waived all objections).

Here, NFS has been utterly silent since being served with COR Clearing's Subpoena. NFS has not contacted counsel for COR Clearing.  It has not produced responsive documents.  It has not lodged any objections to the Subpoena.  And it has not moved the Court for a protective order or to quash the Subpoena.  Consequently, NFS has waived its objections to the Subpoena, and it should be compelled to produce all responsive documents in its custody, possession, or control.[5]

---

[5] As COR Clearing is moving to compel for failure to respond to a subpoena under Federal Rule of Civil Procedure 45, COR Clearing was not required to meet and confer with NFS regarding the relief sought herein.  *See, e.g.*, *Travelers Indemnity Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 115 (D. Conn. 2005) ("Travelers is correct that its motion is governed by Rule 45 and thus not subject to the obligation to meet and confer under Local Rule 37.").  In any event, in light of NFS's repeated failure to respond to *any* of the multiple communications sent by COR Clearing, COR Clearing's attempt to contact NFS have been futile.

## IV.     CONCLUSION

For the foregoing reasons, COR Clearing respectfully requests that the Court issue an order compelling NFS to produce all documents in its custody, possession, or control that are responsive to COR Clearing's Subpoena, award COR Clearing its fees incurred in pursuing this Motion, and award such further relief as to which COR Clearing might be entitled.

Dated:  December 31, 2015                           Respectfully submitted,

By: s/ Robert P. Gammel
Robert P. Gammel
Law Offices of Jan Meyer & Associates, P.C.
1029 Teaneck Road, 2nd Flr.
Teaneck, New Jersey 07666
rgammel@janmeyerlaw.com
(201) 862-9500

**LOCAL COUNSEL TO APPLICANT COR CLEARING, LLC**

By: s/  Michael T. Hilgers
Michael T. Hilgers
Andrew R. Graben
**GOBER HILGERS PLLC**
14301 FNB Parkway, Suite 100
Omaha, NE 68154
Telephone: 402.218.2106
Facsimile: 877.437.5755
mhilgers@goberhilgers.com
agraben@goberhilgers.com

**ATTORNEYS FOR APPLICANT COR CLEARING, LLC**